967 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio PEREZ aka Armondo Perez, Defendant-Appellant.
 No. 91-10425.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 13, 1992.*
Decided June 22, 1992.
 
 Before CHOY, HUG and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Antonio Perez appeals from the twenty-seven month sentence imposed after his guilty plea to one count of fraud and related activity in connection with an access device under 18 U.S.C. § 1029(a)(2) and aiding and abetting under 18 U.S.C. § 2. Perez contends that the district court erred when it increased his offense level by five levels under United States Sentencing Guideline § 2F1.1(b)(1)(F)[1] and urges that the proper adjustment is three levels. Finding Perez's contentions without merit, we affirm the district court's sentence.
 
 
 3
 On March 26, 1991 Daisy E. Salgado was arrested after attempting to obtain a $500 cash advance at O'Shea's Casino in Las Vegas using a stolen Wells Fargo credit card and a counterfeit California interim driver's license in the same name. At the time of her arrest she also had in her possession an electronic key issued by the Imperial Palace, a Las Vegas hotel/casino and two round-trip air tickets to Burbank, California.
 
 
 4
 Salgado told the arresting agents that on March 27th she travelled to Las Vegas with five other individuals for the purpose of fraudulently obtaining cash advances using stolen credit cards and false identification. She further stated that one of those individuals had rented a room at the Imperial Palace and that the key card was for that room. The agents subsequently learned that the key was to room number 4125 which was registered to Gomer T. Sevillano.
 
 
 5
 The agents proceeded to room 4125 and at approximately three feet from the door they heard a voice from within say, "Come on ... what do you want to do, stay here and get busted?" One of the occupants then opened the door and began to leave at which time the agents identified themselves and detained Sevillano, Perez, and Victor M. Ulloa all of whom were in the room, for questioning and to determine their identities. Patdown searches of the men uncovered numerous counterfeit California driver's licenses and commercial identification cards bearing Salgado's, Perez's, and Ulloa's pictures, credit cards in the same names as those on the identification cards as well as a number of cash advance receipts and a quantity of United States currency.
 
 
 6
 The three men were placed under arrest and on April 10th they were indicted on the charges previously noted. On April 19th Perez entered a plea of not guilty, but on June 3rd he changed that plea to guilty. The Presentence Report (PSR) recommended, among other adjustments not at issue on appeal, that the district court increase Perez's base offense level of six by five levels under § 2F1.1(b)(1). The commentary to that section provides that "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss." U.S.S.G. § 2F1.1(b)(1), comment (n. 7). The PSR reasoned that, given this commentary, Perez's sentence should not merely be increased by three levels to reflect the "actual loss" of $15,199.78, the amount that was charged on the stolen credit cards, but rather should be for five levels in order to reflect the "intended loss" which the PSR determined was the total available credit on all of the stolen credit cards or $52,636.20. The district court followed the PSR's recommendation.
 
 
 7
 At the sentencing hearing Judge George made the following findings as support for the five level increase for "intended loss": Perez and his codefendants had stolen the cards from a mail carrier and therefore, they were aware of the available credit for each card. They travelled to Las Vegas expressly to obtain fraudulent cash advances and successfully had obtained over $15,000 in fraudulent advances. He concluded,
 
 
 8
 that the only thing that stopped them--now if they had left the community with that kind of loss, then I think your argument would have been far better. The only thing that stopped them from taking more, the court will find, is that they were discovered, and that the intended loss would have exceeded more than forty thousand dollars.
 
 
 9
 Reporter's Tanscript, Sentencing Hearing, at 19 (Sept. 13, 1991). In this regard, the district court agreed with the government that the circumstances surrounding the arrest, including agents overhearing Sevillano saying "come on, what do you want to do get busted?," that Sevillano had all the cards and identification, and defendants' preparation to flee at the time they were arrested also supported the finding that they would have made further charges had they not been caught.
 
 
 10
 We review the district court's findings of fact made in the course of applying the Guidelines for clear error, United States v. Wilson, 900 F.2d 1350, 1355 (9th Cir.1990) and, given the facts of this case, we cannot say that the district court's finding of intended loss equal to the limits on the stolen credit cards was clearly erroneous. Perez and his codefendants stole the cards from a mail carrier and thus likely were aware of the available credit limits on the cards. They travelled to Las Vegas with the express purpose of committing credit card fraud and, at the time of their arrests, already fraudulently had obtained over $15,000 in cash advances. Moreover, Sevillano's statement prior to arrest coupled with the facts that the Perez and his codefendants had the credit cards with matching counterfeit identification cards in their possession at the time of arrest and were preparing to flee supports as reasonable the district court's inference that, but for their capture, Perez and his codefendants would have continued in their scheme and charged the cards to their limits. Even if the district court's findings of fact could not support the conclusion that Perez and his codefendants actually intended to charge the cards to the available limits, they nevertheless would support the conclusion that further fraud was probable. The district court therefore did not clearly err by increasing Perez's offense level under the Guidelines, which allow increases based on intended or probable loss. U.S.S.G. § 2F1.1(b)(1), comment (n. 7).
 
 
 11
 The district court's sentence is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Unless otherwise indicated, we apply the version of the Guidelines that was in effect at the time the defendant was sentenced. 18 U.S.C. § 3553(a)(4)-(5). Perez was sentenced on August 31, 1991 prior to the most recent amendments in November 1991. Thus, all references to the Guidelines are to the Guidelines as amended in November 1990
 Section 2F1.1 provides, in pertinent part:
 Fraud and Deceit
 (a) Base Offense Level: 6
 (b) Specific Offense Characteristics
 (1) If the loss exceeded $2,000, increase the level as
 follows:
 Loss (Apply the Greatest) Increase in
 Level
 (A) $2,000 or less no increase
(B) More than $2,000 add 1
(C) More that $5,000 add 2
(D) More than $10,000 add 3
(E) More than $20,000 add 4
(F) More than $40,000 add 5
(G) More than $70,000 add 6
 ...
 United States Sentencing Commission, Guidelines Manual, § 2F1.1 (Nov. 1990).